May it please the court. I'm Chelsea Estes of Federal Defenders of San Diego on behalf of the appellant, Mr. Gaston. The purported inventory search in this case was unlawful for two reasons. First, because officers violated the written inventory policy by opening a locked container, and second, because they were solely investigating, as shown both by the paperwork that reveals officers conducted no inventory at all, and also by their own statements regarding the contents of the locked container. Quote, we are not talking about jewelry. Quote, it sounds like something heavy, like a gun. For either or both of these reasons, this court should remand with instructions to suppress. Unless the court has another preference, I'll begin by addressing the policy violation and then move to the circumstances surrounding the search. The entirety of the policy read together necessarily means that officers are prohibited from opening locked containers. The inventory search policy provides three rules regarding areas to be inventoried. There is no dispute that subsection C specifically deals with locked containers, and there is no dispute that the locked lockbox in this case is a locked container within the meaning of the policy. The only dispute is whether these officers' routine practice of opening locked containers anyway, when they have a key, is permissible. It is not. Why not? Your Honor, it's unreasonable based on, first, the reading of the policy. I think policy concerns and statutory interpretation concepts both support that conclusion. Well, we have case law saying they have to follow the policy. Yes, Your Honor. We're not talking about, their argument is they didn't contradict the policy. They sort of supplemented it, if you could use that word, by their common practice. So what's wrong with that?  What specifically does it contradict in your view? Because under areas to be inventoried, it starts by saying under normal circumstances, locked containers aren't to be searched unless they have a key or they're easy to open. But that seems to leave open the possibility of abnormal circumstances or circumstances suggesting that there may be an important reason to open to inventory. Yes, Your Honor. So I believe what the court is referencing right now is subsection B. And the applicable subsection in this case is subsection C. Subsection C directs officers what to do when we encounter a locked container, which would be like the lock box in this case. And it says that officers are to describe it along with the approximate size and weight of the container. Subsection C operates to narrow the general rule in subsection A, that officers are normally to search all areas of a vehicle where valuables are likely to be stored, including any containers. But the officer's interpretation and the government's interpretation essentially renders subsection C meaningless. So I think it's clear when those three provisions are read together, we're not talking about a situation where sometimes a key can be used, as with compartments. We're talking about a situation where there is no allowance ever for a key to be used with a container. So you're saying that subsection C requires the police officers to only just describe them with their approximate size and weight, but not to open them? Exactly, Your Honor. Even if they have a key? Even if they have a key. And I think the reason we know that most clearly is because in subsection B, there is a reference to what to do with locked compartments when you have a key. So drafters know exactly how to indicate when they want, in certain circumstances, to allow officers the authority to use a key. But subsection C does not do that at all. So the three sections read together clearly indicate that they're never to open a locked compartment. Is it your position that the written policy can't be supplemented or altered by standard practice that is followed? Yes, Your Honor. Under Bertine, we have to have a single, familiar standard for officers to follow. Well, it may be single and familiar if it's supplementary to the written. That's why I'm asking you that. If, just to use an example, if there's an interpretation that is known to everyone, it's taught and gone over, and this is how it's to be handled every time, and it's slightly different than what's in writing, it's your view that that's still invalid? Yes, Your Honor. My view is that if it contradicts the written policy, it is invalid. But to you... But that's not what Judge Grieper's asking. There's the contradiction. But what about just supplementing where a written policy doesn't speak to something? If this were a case where they were just supplementing, I think that would be unlike the facts of this case because the officers in this case testified that... Could be unlike it, but what's the answer to the question, which is whether it's a policy... We have case law allowing that. Don't we have case law allowing the written policies to be supplemented by practice as long as it can be established to the court's satisfaction that that is indeed a regularly followed practice? I think that's a done deal in our case law, isn't it? Yes, Your Honor. I think to answer the court's question, if there is a situation where policy is written and then there is policy of the entire department, which I don't think we have established here, as long as it does not contradict, then that would be permissible. I have another question. Did the district court here make a finding of dual purpose or was the district court's finding limited to finding a conclusion,  Yes, Your Honor. ...the latter, that it was not solely an inventory search? So if we were to conclude that the evidence showed that there was actually dual purposes, then you would argue that that was error. I'm not sure I understand the court's question. If we're looking at this, I'm looking at this, and I'm thinking, well, it didn't strictly comply with the inventory search, but I can see dual motive searches are allowed, and I can see that maybe this is a dual motive search, given the other facts, such as the fact that there was plenty of other stuff in the car that was valuable that wasn't even listed on the inventory sheet. So at a minimum to me, I would think this likely was a dual motive search, which is permissible, but I'm not sure that's what the district court found. The district court rejected the defense's position that this was solely an investigation. I agree that a dual purpose is permissible. I'd like to talk about in more detail why we do not have a dual purpose here. I think there's two main areas of evidence that most clearly show that. First, it's the paperwork that was filled out, and second, it's the officer's comments. The paperwork that was filled out in this case shows that no inventory at all was conducted. The only thing that was documented in this case was the contraband. But there was no inventory. There was no inventory, exactly. The officers have labeled this an inventory, but nothing shows that an inventory was conducted. When we look at the inventory form, which policy instructs officers, where policy instructs officers to list the items to be inventoried, we see nothing. So where am I supposed to be looking? I've looked at the arrest report and the vehicle report, and can you tell me the ER site that you're calling inventory? Yes, Your Honor. So I'm going to answer the court's question, and then I would like to reserve the remainder of my time for rebuttal. The inventory form was actually not included in the ER as an oversight, but it was provided to the court later as government's Exhibit 6 via email. Okay, I have Exhibit 6. Yes, so that is the inventory form. It's two-sided. On the second side in the narrative portion, the officers cross-reference a police report. Is that where the... I've got that right in front of me, and I know your time is ticking, but where are you supposed to list the inventory? So officers, according to policy, are supposed to list the inventory in the narrative on that form. The officers did not do that in this case. Okay, thank you. That's where it would go, though. That's where it would go if they complied with policy. What they did in this case, as we can see at ER 186 and 187, is they documented the gun, the ammunition, and the lockbox in the investigation narrative of their report. Right, thank you. Yes, thank you, Your Honor. Thank you. We'll hear from the government next. Good morning. May it please the Court. Nicole Reese Fox for the United States. The District Court held an evidentiary hearing and found, based on the totality of the circumstances before her, that this was an inventory search, that it complied with the policy, and that it was a reasonable interpretation of that policy, and that the motive, the officer's motive, in searching the lockbox was to create an inventory. That conclusion was readily supported by the officer's testimony. I'm really troubled by the lack of an inventory when you're allegedly, supposedly conducting an inventory search, and there's no identification of the inventory in combination with the fact that the search of the lockbox appears under the investigation section of the report and not under where the inventory should be inventoried. Absolutely, Your Honor. I understand the Court's concern. That came up at the evidentiary hearing, and what the officers testified is the reason they didn't inventory any of the other items in the car. They didn't consider them valuable. Exactly, Your Honor. And the policy, subsection B2A of the policy, instructs the officers to inventory items of value. And as they testified under oath, they did not inventory anything else because they didn't consider them to be valuable. So they didn't think a leather jacket was valuable, or the, what, boom box? Wii players. Right, leather jacket, Wii, DVD player, tools, really none of it's of value? That's what the officers testified, and the District Court credited that testimony in concluding that their purpose was to create an inventory. They contrasted it with diamond jewelry or something like that? Yes, exactly. They said that they're looking for items of value, such as, I think the prosecutor asked the officer, what would you consider to be an item of value? And he said, I'm looking for jewelry, diamond rings. To me, a $50 DVD player that you could buy at Walmart is not an item of value. Now, the policy leaves it to the officer's discretion to determine what is of value. And these are officers who have been with the police department for a decade, and they've been trained in their training and experience to focus on items, you know, akin to jewelry. And here, the defendant told the officer that the lockbox contained a whole bunch of jewelry. So, especially given that fact, the District Court found that the officers were really focusing on documenting those items because they were, according to the defendant, valuable. ER-192, the policy also requires that all items of value must be listed on the inventory report. And so, it's very clear in the case law, I think, that practice can supplement a written policy as long as it doesn't contradict it. But the first step is, you've got to follow the written policy. And so, it's very troubling. What's your best answer to the fact that when we get to the, well, we don't have an inventory. I mean, we don't even have the gun and the ammunition listed on the inventory section of the report. Correct. And Officer Gallegos, who filled out the inventory form, testified that his intention in cross-referencing the incident report was to alert the tow company or whoever had the inventory that the items that were in the custody of the police department were going to be inventoried on that form because, at that point, they were seized as evidence. There's a very strong record. Oh, I'm sorry. I didn't realize. Were you done? Sure. I was going to answer the question about valuables and why, yeah, and the officers both testified that on ER-95, for example, one of the officers said, I documented what the policy tells me to document. At ER-90, the officer said, I didn't list the other items because they didn't have value. So, the policy leaves it to the officer's discretion and that's permissible. A policy can leave certain determinations to officers. I mean, in a certain sense, everything has value. But then, you know, what's the threshold? And I think that it is somewhat startling that those items that were in the car didn't meet that threshold. But clearly, there is one somewhere. I understand the court's concern. The officers testified that those items didn't meet their threshold. And as I think the court has recognized, an officer's standard practice can supplement the written policy. When the policy uses a term like valuable or of value, this court's case on the Supreme Court's case law permits a police department to leave it to the officer's discretion as long as there's sort of a standard practice. And they both testified that in their standard practice, their understanding of the policy in their decade on the police department, those items didn't have value. Defense counsel has a very strong argument that the search was at least partially investigatory. They're surveilling a house and followed this car because it came from the house that was, I think, there was suspected drug activity going on. And she's got a strong argument. Your response, I think, is that it would have to be solely investigatory in order to cross the line. Yes, Your Honor, because the case law recognizes that a dual motive does not invalidate the search. This is a different set of police officers than the officers who were initially surveilling the house. They called it in and said, look for this car. But that's why they called it in, counsel. This is a tough argument for you. And I think in your briefing, you're relying on the fact that that's not, a dual motive is still permissible. And getting back to Judge Wardlaw's question, did the trial court in this case find that the search was solely an inventory search? Yes, Your Honor. At ER 164, the district court found that the totality of the facts leads the court to conclude that it did comply, I think that means with the policy, and also was reasonably designed to produce an inventory, which is sort of the standard. So that's a different, so that tells me that the trial court was convinced it was an investigatory search, but not solely an investigatory search. In other words, it still leaves, forgive me, an inventory search, but not solely. So it still leaves the possibility for the dual, right? She didn't say this was only investigatory or only, in this case, inventory search. Right, I think for this court to find that it has a dual purpose, the court would have to say that the facts that led the court, the district court, to find solely an inventory search were clearly erroneous. But the court didn't say that. She didn't say solely, that's the point. Oh, she did not, true, true, yes. It was a very short bit of reasoning that we had to vote. It seemed to me to be ambiguous as to whether it was, in the district court's view, entirely inventory or partially inventory, but for, as I understand your argument, it doesn't matter because in either case, the result was correct. You only need it to be partially an inventory search. Correct, Your Honor. At least, yes. Correct, Your Honor. Under the cases cited in our brief, including United States versus Bauhey, a dual motive does not make a search pretextual. Okay, so that gets me to the question I really wanted to ask, please. What should we do with the fact that there's no inventory? So the judge finds, the trial court has a hearing, very diligently, goes through everything, decides that it's an inventory, has to be at least partially an inventory search in order for the government to prevail, but there's no inventory, and that really jumps off the page at us. So what's your best response? I have two responses. One, the officers explained why there was no inventory, and that was because there was nothing of value in the car. So had there been a diamond ring in the car that they didn't inventory, that would be a problem, but they explained the lack of an inventory, and I'd also, Exhibit 6, it's not as if it's blank, and I turn the court to this first half where the officer is going through each sort of item in the car that are delineated, whether it has seats in the front, whether it has seats in the back, and he's inventorying, and in the body camera video, which I don't believe the court has, but I'd be happy to provide. We didn't have Exhibit 6 either. It was blank for us, by the way. It wasn't included in the record. Yes, I apologize. I didn't realize that the appellant had it included, had not included it in the excerpts of record, but the court does now have it, and I'd be happy to provide the body cam video if that would help the court. Well, let me see if you saw the body cam video. It went on and off, so. Yes, the part that I found compelling is, the officer is, before he's going to search the car, he's literally checking off each item, looking at the car. Where is that, on Exhibit 6, what? Yes, that's why I was turning the court to the first half of Exhibit 6 here. Okay, I'm back to the first half, and it shows me registration, battery, differential. It's about the car, it's not the contents. Yes, but that's my point, is that he's sort of going through the check boxes, and the first thing he's required to do is to assess the status of the car, to see, does it have seats, does it have a radio? And so he's slowly going through that. If he's just doing an investigation, he's not going to bother slowly ticking off all of these boxes. I think what really bothers me, when their testimony was nothing was of value, is the fact that they've also written down that he's homeless, and it seems to me that all those things to a homeless person are of value. I just don't understand how the police could both have knowledge and recognize that the person's homeless, and then say, well, his leather jacket and all his few possessions in the car are of no value. I understand the court's concern. Because the point of the inventory search, in part, is to protect the police from claims later that the stuff got stolen. And so that's, to Judge Wardlaw's point, for someone who's not a person of means, it's much more likely they're going to have such a report. Right, and I think what the officers testified is that they're thinking about their liability and that they didn't think that they were going to risk a claim of liability that a bag of clothes, for example, was stolen from the car, because that's unlikely to be stolen or misplaced. But Judge Wardlaw's point is, it's much more likely that such a claim would be made by a person who is not a person of means. I fully understand the court's concern. The district court had all of the same facts before her, and she found that it was an inventory search. Unless the court has any other questions, I'd submit. Thank you, counsel. Thank you. Ms. Estes, you have some time remaining. Your Honor, I think what belies the officers' statements that they didn't believe there was anything of value is their testimony at ER 90 that by their very own definition, something that constitutes an item of value is electronics. And what we know from testimony and the body camera footage being testified about is that they did find electronics in the trunk that they did not document as well. So they testified their procedure is to do this, and they did not do that. I think what's important to note in this case is the facts here are even more suggestive of a solely investigative purpose than in Johnson, which the court recently decided. There, the court found that the documentation that the officers filled out showed clearly that they were treating the purported inventory search as an investigation because they noted things like seized property is likely to have evidentiary value. Here, we have facts that even more strongly show that the purpose was solely investigation. What we know is that the officers, as soon as they found the box, they immediately began to try to get into it. What is your response to the argument that the officers were told that there was jewelry in the box and that it would be their normal practice to inventory jewelry because it may be of significant value? So does that contradict or at least lend weight to the district court's finding? No, Your Honor, for two reasons. First, the officers had spent at least seven minutes trying to get into the container before they ever asked Mr. Gaston what was inside and learned that he said it was jewelry. So they had expressed their desire to investigate before ever hearing the word jewelry. The second reason is they themselves made clear they didn't believe jewelry was inside. At ER 155 through 156, they said, we're not talking about jewelry. It's something heavy, like a gun. What is the citation where we can see that they tried for seven minutes to open the box before they asked? Yes, Your Honor. I have that right here for the court. Okay. I apologize, Your Honor. Government counsel's been so kind to say that it's at 160. Thank you. 116. 116. I apologize. I'm sorry, Your Honor. Thank you, counsel. You have used your time. Thank you very much. Thank you. The case just argued is submitted, and we appreciate the especially helpful arguments from both counsel.
judges: Wardlaw, Graber, Christen